1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   EDGAR MONTES SANCHEZ,                    No.  2:20-cv-01428-MCE-JDP
     ARTURO RAMIREZ ALVAREZ,
12   FILIBERTO LOPEZ HERRERA, and
     DANIEL VARELAS HERRERA, as
13   individuals and on behalf of all other   **MEMORANDUM AND ORDER**
     similarly situated persons,
14
                   Plaintiffs,
15
           v.
16
     SARBANAND FARMS, LLC, MUNGER
17   BROS., LLC., CROWNE COLD
     STORAGE, LLC, ROBERT HAWK,
18   CLIFF WOOLLEY, CSI VISA
     PROCESSING, SC, and DOES 1
19   through 10,

20                 Defendants.

21

22          Plaintiffs, who are seasonal farmworkers from Mexico, brought the present action

23   against agricultural entities they worked for in the United States on grounds that their

24   recruitment and employment as blueberry harvesters violated both California statutory

25   and common law.  Defendants include Munger Bros, LLC ("Munger") and two other

26   entities allegedly owned and/or managed by Munger, Sarbanand Farms, LLC and

27   Crowne Cold Storage, LLC.  In addition, Plaintiffs include CSI Visa Processing, SC

28   ("CSI"), a farm labor contractor that supplies Mexican workers to agricultural employers

1    in the United States, as an additional defendant.  Finally, Plaintiffs name Cliff Woolley

2    and Robert Hawk, both of whom serve in managerial positions for the Munger-related

3    Defendants, on an individual basis.[1]

4          Plaintiffs' lawsuit was originally instituted in San Joaquin County Superior Court

5    on June 11, 2020.  On July 15, 2020, after Plaintiffs filed a First Amended Complaint

6    ("FAC") on or about July 10, 2020, also in state court, Defendants (except for CSI)

7    removed the case to this Court on two grounds.  First, Defendants claim that federal

8    jurisdiction is conferred by the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)

9    ("CAFA").  Second, Defendants also argue that federal question jurisdiction is present in

10   any event because Plaintiffs' claims for breach of farmworker H-2A visa requirements

11   necessarily implicate issues of federal law sufficient to provide jurisdiction under

12   28 U.S.C. § 1331.

13         Presently before the Court is Plaintiffs' Motion to Remand (ECF No. 6), made on

14   grounds that neither of Defendants' jurisdictional arguments have merit.  As set forth

15   below, Plaintiffs' Motion is GRANTED.[2]

16

17                              **BACKGROUND**[3]

18

19         According to the operative FAC, Munger is the "number one producer of fresh

20   blueberries in the world" and cultivates more than 3,000 acres of blueberries in

21   California, Washington, Oregon, British Columbia and Mexico.  Since at least 2006,

22   Munger has used the H-2A agricultural visa program to utilize foreign labor to harvest

23   blueberries.   H-2A visas strictly limit the terms and conditions of employment within the

---

[1] All of these individuals and entities are collectively referred to in the body of this Memorandum and Order as "Defendants" unless otherwise noted.  The Court notes, however, that Defendant CSI has not opposed Plaintiffs' Motion to Remand.  Instead, CSI filed a Motion to Dismiss (ECF No. 19).

[2] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

[3] The factual assertions included in this section are derived, at some points verbatim, from the allegations contained in Plaintiffs' FAC, ECF No. 10-1.

1   United States and preclude workers hired pursuant to such visas from leaving their

2   authorized jobsite.  Plaintiffs aver that Defendants were well aware of these restrictions

3   and that Munger and its affiliated entities used CSI to recruit workers under the program

4   in Mexico and to make the arrangements necessary to bring them to the United States.

5        In March 2017, Munger applied to the Department of Labor for authorization to

6   import 387 Mexican H-2A workers to harvest and pack blueberries in California between

7   May 15, 2017 and June 30, 2017.  Additionally, at the same time and for the same

8   period of employment, Defendant Crowne Cold Storage, which was managed by

9   Munger, made a similar application for 171 agricultural workers, resulting in a total of 558

10  workers between the two entities.  Finally, after concluding work in California, Defendant

11  Sarbanand Farms, a wholly-owned subsidiary of Munger, applied for permission, also

12  under the H-2A program, to have all 558 workers come to Washington and process

13  blueberries there between July 10, 2017 and October 25, 2017.

14       Under the terms of the H-2A job orders, Defendants were required to guarantee

15  the California minimum wage of $12.57 per hour along with applicable employment and

16  wage-and-hour laws.  Defendants were further obligated to obtain the necessary visas

17  for the migrant workers, and provide them with inbound and return travel, along with

18  subsistence costs incurred enroute, between the United States and Mexico.  Moreover,

19  Defendants had to furnish adequate housing for the workers while employed in this

20  country.

21       In contravention of these requirements, Plaintiffs claim that the workers were not

22  properly reimbursed for travel and visa costs they incurred, and were not paid for

23  overtime incurred, for transportation to and from their jobsites, for waiting time, and for

24  meal and rest breaks as required by law.  In addition, despite being brought to the

25  United States to work some five months in both California and Washington, some of the

26  workers allege they were sent back to Mexico once the California blueberry crop was

27  harvested.

28  ///

3

1      Citing these alleged shortcomings, and as already indicated above, this lawsuit

2  was filed in state court on June 11, 2020, on behalf of four of the H-2A workers imported

3  by the Munger-related entities.  Plaintiffs assert twelve causes of action under California

4  law, both on their own behalf and for others similarly situated.  Class action allegations

5  are made, not only for all those workers brought by Munger and its affiliates from Mexico

6  in 2017, but also for two subclasses consisting of those workers sent back to Mexico

7  after the California season (the "California subclass," which Plaintiffs estimate at up to

8  about 35 individuals), and for those workers denied mandatory rest periods (Plaintiffs do

9  not quantify the number, stating only that over 10 persons are involved in the so-called

10  "Rest Period subclass").

11      After Plaintiffs filed a FAC, also in state court, Defendants removed the action

12  here on grounds that federal jurisdiction is conferred by CAFA, and upon the argument

13  that because the federal H-2A visa program is implicated by Plaintiffs' lawsuit, the case

14  raises a federal question in any event.

15      Plaintiffs now move to remand these proceedings to state court, arguing that

16  Defendants have not demonstrated, as they must in order to qualify for federal class

17  action treatment under the provisions of CAFA, that the amount in controversy exceeds

18  the sum of $5,000,000.00.  Plaintiffs also allege that federal question jurisdiction is not

19  conferred simply because the federal H-2A visa program happens to be implicated, and

20  accordingly urge this Court to remand the matter back to San Joaquin County where it

21  originated.

22

23  **STANDARD**

24

25      When a case "of which the district courts of the United States have original

26  jurisdiction" is initially brought in state court, the defendant may remove it to federal court

27  "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  There are

28  two bases for federal subject matter jurisdiction:  (1) federal question jurisdiction under

4

1  28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.  A district court

2  has federal question jurisdiction in "all civil actions arising under the Constitution, laws,

3  or treaties of the United States."  Id. § 1331.  A district court has diversity jurisdiction

4  "where the matter in controversy exceeds the sum or value of $75,000, . . . and is

5  between citizens of different states, or citizens of a State and citizens or subjects of a

6  foreign state . . . ."  Id. § 1332(a)(1)-(2).

7        A defendant may remove any civil action from state court to federal district court if

8  the district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a).  "The

9  party invoking the removal statute bears the burden of establishing federal jurisdiction."

10  Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v.

11  Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  Courts "strictly construe the

12  removal statute against removal jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566

13  (9th Cir. 1992) (internal citations omitted).  "[I]f there is any doubt as to the right of

14  removal in the first instance," the motion for remand must be granted.  Id.  Therefore, "[i]f

15  at any time before final judgment it appears that the district court lacks subject matter

16  jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

17        The district court determines whether removal is proper by first determining

18  whether a federal question exists on the face of the plaintiff's well-pleaded complaint.

19  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  If a complaint alleges only state-

20  law claims and lacks a federal question on its face, then the federal court must grant the

21  motion to remand.  See 28 U.S.C. § 1447(c); Caterpillar, 482 U.S. at 392.  Nonetheless,

22  there are rare exceptions when a well–pleaded state-law cause of action will be deemed

23  to arise under federal law and support removal.  They are "(1) where federal law

24  completely preempts state law, (2) where the claim is necessarily federal in character, or

25  (3) where the right to relief depends on the resolution of a substantial, disputed federal

26  question."  ARCO Envtl. Remediation L.L.C. v. Dep't of Health & Envtl. Quality, 213 F.3d

27  1108, 1114 (9th Cir. 2000) (internal citations omitted).

28

1

**ANALYSIS**

2

3    **A.      Jurisdiction Under CAFA**

4         Plaintiffs first take issue with Defendants' claim that their lawsuit was properly

5    removable because federal jurisdiction is conferred by CAFA.  Under CAFA, federal

6    district courts have jurisdiction to adjudicate class actions provided that certain

7    conditions are met, including 1) that the proposed class has more than 100 members;

8    2) that the parties are minimally diverse; and 3) that the amount in controversy in the

9    aggregate exceeds the sum or value of $5,000,000.00.  28 U.S.C. § 1332(d)(2); see also

10   Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1195 (9th Cir. 2015).

11        For purposes of satisfying the amount in controversy requirement, a defendant

12   asserting CAFA jurisdiction must include in the notice of removal "a plausible allegation

13   that the amount in controversy requirement exceeds the jurisdictional threshold."  Dart

14   Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014).  Mere legal

15   conclusions do not suffice; an underlying factual basis must be alleged.  Leite v. Crane

16   Co., 749 F.3d 1117, 1122 (9th Cir. 2014) (citing Gaus v. Miles, 980 F.2d 564, 567

17   (9th Cir. 1992)), cert. denied, 574 U.S. 934 (2014).

18        When, as here, the claimed amount in controversy is contested by the Plaintiffs,

19   the defense bears the burden of establishing, by "a preponderance of the evidence," that

20   the $5,000,000 threshold has been met.  Rodriguez v. AT&T Mobility Servs. LLC,

21   728 F.3d 975, 977 (9th Cir. 2013).  It is not enough to offer "mere speculation and

22   conjecture, with unreasonable assumptions."  Ibarra, 775 F.3d at 1197.  Instead, CAFA

23   requires that the removing party, once pressed to do so, support its amount in

24   controversy allegations with real evidence.  See Dart Cherokee, 574 U.S. at 89; Ibarra,

25   775 F.3d at 1197-98.  The Ninth Circuit in particular has stated that "summary-judgment

26   type evidence" is required for a removing defendant to meet its burden of demonstrating

27   the requisite amount in controversy when challenged.  Singer v. State Farm Mut. Auto.

28   Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997).

6

1          The Court now applies these principles to the factual basis offered by Defendants

2    in response to Plaintiffs' assertion that this case is not worth $5,000,000.00, despite

3    Defendants' claim that as much as $8,029,626.30 is in controversy.  Plaintiffs' First

4    through Third Causes of Action are misrepresentation claims on behalf of the California-

5    subclass, only, which Plaintiffs estimate as including only up to 35 individuals.

6    Defendants argue that those causes of action alone carry the potential for damages of

7    some $1,047,337.20.  They base that total on 78 days of work missed due to not

8    harvesting the Washington crop, multiplied by a daily compensation rate of $192.82 for

9    each of the 35 workers during that period.

10         Defendants make assumptions when making daily estimates that are not borne

11   out by either Plaintiffs' allegations or any evidence they offer.  First, Defendants assert

12   the daily rate paid by Munger, whose H-2A workers were contracted to work six 10-hour

13   days, at a per hour rate of $12.57, should include, in addition to the $125.70 regular time

14   another 2.2 hours of overtime (at time-and-a-half, or $18.87 for each overtime hour).

15   While Defendants purport to base that figure, which totals approximately $168.21, on the

16   FAC,[4] that is an unreasonable reading of Plaintiffs' operative pleading.  All the FAC says

17   is that Plaintiffs "at various times relevant to this action" worked in excess of 10 hours

18   per day and were therefore entitled to overtime.  FAC, ¶¶ 152-53.  It does not state, as

19   Defendants claim, that they "regularly" worked in excess of those hours, much less than

20   the estimated 2.2 hours per day consumed by transportation and waiting time caused

21   them to do so.  Yet Plaintiffs' figure, which includes 2.2 hours for each employee in the

22   subclass for each and every day, does just that.  Defendants' assumption in that regard

23   is not warranted on the basis of Plaintiffs' allegations alone as Defendants assert, and in

24   ///

25   ///

26   ///

27   ///

28   _____

     [4] See Defs.' Opp., ECF No. 9, 8:21-24.

1   the Court's view the only daily wage that has been adequately demonstrated is $125.70,

2   for 10 hours at $12.57 an hour.[5]

3       Defendants reach even further, however, in attempting to inflate Plaintiffs' overall

4   daily compensation by including an additional $12.57 per worker per day in hotel costs,

5   despite the fact that those costs were borne by the employer and not the H-2A workers

6   under the terms of the program.  Also unwarranted is Defendants' claim that $12.07 per

7   day should be included as daily food costs despite the fact that any such costs were

8   deducted from Plaintiffs' pay and therefore would not add to the amount in controversy.

9   See Decl. of Stephanie Thiessen, ECF No. 9-2, ¶ 7 and Exh. C.  Consequently, at most,

10  Defendants have demonstrated a $125.70 daily rate.  Multiplying that rate times 78 days

11  for 35 employees yields a total of $343,161.00.  Even when that amount is doubled as a

12  statutory penalty under California Labor Code § 972, as Defendants have calculated, a

13  total figure of only $686,322.00 is indicated, substantially less than Defendants' claimed

14  total of $1,047,337.20.

15      Plaintiffs' Fourth and Fifth Causes of Action seek damages on behalf of the entire

16  class for unpaid wages for travel time.  Arguing that any such wages should be paid at

17  the overtime rate is not warranted for the same reasons outlined above.  It is patently

18  unreasonable to assume, based only on the allegations of the FAC, that each of the 558

19  H-2A workers are entitled to be paid for waiting and transportation time at an overtime

20  rate, for each and every day they worked.  Consequently, while Defendants assign an

21  additional $787,288.06 to those allegations, the Court does not believe that amount, or

22  indeed any specific figure, has been properly substantiated.

23      Proceeding to Plaintiffs' Sixth Cause of Action, that claim seeks recovery of

24  contractual wages, reimbursement of expenses for travel and visa costs, and alleged

25  unpaid work time and overtime.  Even Defendants agree that this claim appears little

26

27      [5] While the Court recognizes that only 387 of the 558 H-2A workers at issue in this case worked at Munger, with the other 171 working at Crowne on an eight-hour per day, five-day per week basis, it uses the higher Munger figures as representing the maximum amount that the 35 workers could reasonably

28  claim, provided in fact they all were employed by Munger.

1   more than an amalgam of claims already made under the Fourth, Fifth, and Seventh

2   Causes of Action, and Defendants concede that assigning it any independent value

3   would "constitute double recovery" since it "seek[s] the same exact damages as other

4   claims."  Defs.' Opp., ECF No. 9, 10:24-26.  Therefore, the Court assigns no additional

5   amount in controversy to the Sixth Cause of Action.

6          It is the Seventh Cause of Action where Plaintiffs seeks indemnification for visa

7   expenses, as well as transportation and subsistence costs incurred while travelling to

8   and from the United States that were not reimbursed by Defendants.  Defendants assign

9   a per employee value of $638.78 to each of the 558 H-2A workers based on the average

10   amount paid by Defendants for those expenses.  They therefore arrive at an amount in

11   controversy for the Seventh Cause of Action totaling $356,439.24.  Defendants' own

12   records, however, document that they have already paid $353,888.00 for visa and travel

13   costs, which is nearly the amount assigned to the claim by Defendants.  Thiessen Decl.,

14   ¶ 7.  Since Plaintiffs seek only <u>reimbursement</u> for their own out-of-pocket expenses (see

15   FAC, ¶¶ 171-72), the amount in controversy figure advanced by Defendants is not based

16   upon either evidence or reasonable assumptions and is accordingly disregarded.

17          Plaintiffs' Eighth Cause of Action avers that because the entire class represented

18   by Plaintiffs was not provided all wages due at the time their employment ended, waiting

19   time penalties are payable, pursuant to California Labor Code § 203, in an amount equal

20   to one day's wage, up to a maximum amount of 30 days for each day's wages are

21   unpaid.  FAC ¶¶ 177-78.  Defendants include within the daily wage overtime for each

22   and every employee, allegedly in reliance on Plaintiffs' claims, but as indicated above

23   the FAC does not support any such reading.  Instead, at most, the evidence presented

24   and Plaintiffs' assertions documents a ten-hour per day, six-day work week at Munger

25   (which, at $12.57 an hour gives a total of $125.70), and an eight-hour per day, five-day

26   work week at Crowne ($100.56 at the same rate of pay).  Given the 387 employees at

27   Munger and the 171 employed by Crowne, multiplying the above figures by 30 results in

28   ///

a potential amount in controversy of $1,975,249.80, again less than the $2,553,700.50 advanced by Defendants.

The Ninth Cause of Action is predicated upon California Labor Code § 226(e), which permits an employee who has not been provided with accurate wage statements to recover a penalty in the amount of $50.00 for the initial pay period and $100.00 for each subsequent pay period where a compliant wage statement is not furnished, up to a maximum per employee penalty of $4,000.00.  Given the 558 employees involved and the fact that, according to the FAC, they worked seven weeks in California, Defendants calculate a total potential amount in controversy for that claim of $362,700.00, which the Court believes is permissible.

Defendants' calculation of the amount at stake in the Tenth Cause of Action also appears reasonable.  That claim seeks damages on behalf of the Rest Period subclass for failure to provide legally mandated rest periods and, under California Labor Code § 226.7, such failure entitles an employee to additional compensation in an amount equal to one hour of the employee's regulator rate of pay for each day the rest period is denied.  Defendants calculate the amount in controversy by multiplying the number of employees in the subclass (10) by the average number of work days in California (42) and the hourly wage ($12.57) for a total of $5,279.40.  See Opp, 13:20-22.

Because Defendants concede that the final two claims asserted by Plaintiffs (the Eleventh and Twelfth Causes of Action) do not appear to implicate any additional damage claims and seek the same recovery as Plaintiffs' other causes of action (Id. at 13:26-27), the only remaining issue is whether the potential for punitive damages and attorney's fees augments the amounts recognized above.  The FAC seeks punitive damages only as to four of the twelve causes of action pled against Defendants, the Second through Fifth Causes of Action.  As indicated above, the Court has concluded that only with respect to the Second and Third Causes of Action have Defendants identified a cognizable amount in controversy ($686,322.00).  Even though that amount has already been doubled as a statutory penalty under California Labor Code § 972,

1   Defendants posit a potential punitive damage figure of $523,668.60,[6] arguing that the 1:1

2   compensatory/punitive ratio approved by the Ninth Circuit in <u>Greene v. Harley Davidson</u>,

3   965 F.3d 767, 771-72 (2020) supports an additional punitive damage assessment in the

4   same amount for amount in controversy purposes.  That argument is unavailing because

5   Plaintiffs cannot recover both statutory double damages under the California Labor Code

6   and seek punitive damages on their tort claims, here for negligent and intentional

7   misrepresentation.  Instead, in order to avoid a double recovery, Plaintiffs must elect

8   their remedy.  <u>See</u> <u>Marshall v. Brown</u>, 141 Cal. App. 3d 408, 419 (1983) (under

9   analogous Labor Code provision).  Because Defendants have already doubled Plaintiffs'

10  base damages under the California Labor Code they cannot do so again, and

11  consequently no additional amount in controversy for punitive damages has been

12  identified.

13          Finally, with respect to potential attorney's fees, Defendants urge the Court to

14  assess $1,605,925.26, which represents 25 percent of their total calculated damages for

15  amount in controversy purposes of $6,423,701.04.  Defendants make this calculation

16  despite including a declaration from their own counsel indicating that attorney's fees to

17  take the case through trial will be at least $500,000.00.  Opp., 14:25-27, citing Decl. of

18  William Woolman, ECF No. 9-1, at ¶¶ 11-12.  By using a percentage of the estimated

19  total recovery, however, Defendants contemplate a fee award based on the so-called

20  common fund doctrine, where fees are awarded as a percentage of total damages in

21  order to equitably spread the costs of litigation between the benefiting parties.  In the

22  present case, however, attorney's fees are explicitly sought by statute under California

23  Code of Civil Procedure § 1021.5 and various California Labor Code provisions.  <u>See</u>

24  FAC, ¶ 201.  Statutory attorney fees, unlike those sought under a common fund basis,

25  are typically determined through the lodestar method which assesses the number of

26  hours expended together with a reasonable hourly rate and may adjust the figure using a

27  _____

28          [6] $523,668.60 is the amount advanced by Defendants as representing the amount in controversy
    for the First through Third Causes of Action, prior to any statutory double penalty being applied.

1    multiplier depending on the complexity of the case and other factors.  See, e.g.,

2    Serrano v. Priest, 20 Cal. 3d 25, 48 (1977).  Since the present case has only just been

3    commenced, not surprisingly there is no data cited as to the reasonableness of any

4    hours expended or the rate being charged, and defense counsel's blanket assertion that

5    the case could cost $500,000.00 with no supporting detail whatsoever is insufficient.

6    The Court therefore declines to include any award of attorney's fees as an amount in

7    controversy given the evidence before it.

8         In light of all the above, the Court finds the following figures to have been

9    established for purposes of CAFA's amount in controversy requirement:  for the First

10   through Third Causes of Action, $686,322.00; for the Eighth Cause of Action,

11   $1,975,249.80; for the Ninth Cause of Action, $362,700.00; and for the Tenth Cause of

12   Action, $5,279.40.  These figures total $3,029,551.20, well below the $5,000,000

13   threshold needed for CAFA jurisdiction, and the Court thus finds that jurisdiction on that

14   basis is lacking.

15        **B.    Federal Question Jurisdiction**

16        Defendants alternatively argue that this Court has jurisdiction on grounds that a

17   federal question has been raised under 28 U.S.C. § 1331.  According to Defendants,

18   while the twelve causes of action pled in the FAC are state law claims, because they

19   raise "substantial" questions under the federal H-2A visa program as to whether various

20   requirements of that program were violated, Plaintiffs' state claims in fact come within

21   federal jurisdiction.

22        Plaintiffs' argument in this regard has already been rejected.  In Nieto-Santos v.

23   Fletcher Farms, 743 F.2d 638 (9th Cir. 1984), the Ninth Circuit affirmed the district

24   court's remand of a case which involved, like the present matter, state law claims by

25   farmworkers whose employment was regulated under the visa program for temporary

26   unskilled workers, then called the "H-2" program.  According to the court, "absent

27   evidence of congressional intent to make contractual rights and duties 'federal in nature,'

28   even causes of action based on an alleged breach of a federally-mandated contract

12

1  provision present 'only state-law claims.'" Id. at 641, citing Jackson Transit Auth. v.

2  Local Div. 1285, Amalgamated Transit Union, 457 U.S. 15, 23 (1982).  Significantly, too,

3  subsequent district court decisions, in accord with Nieto-Santos, have found that

4  analogous contract, wage and hour law, and misrepresentations claims by H-2A workers

5  like Plaintiffs herein do not "arise under" federal law so as to trigger federal question

6  jurisdiction, even though H-2A regulations may control the terms of the workers'

7  contracts.  See, e.g., Salinas de Valle v. Sierra Cascade Nursery, Inc., No. 2:06-cv-

8  2274-GEB-DAD, 2007 WL 214604 at *2 (E.D. Cal. Jan. 25, 2007) (remand proper

9  because no "substantial federal question that is so important that it sensibly belongs in

10  federal court" was implicated under those circumstances (internal quotations and

11  citations omitted)); Castillo v. Western Range Ass'n, No. 3:16-cv-00237-RJC-VPC, 2017

12  WL 1364584 at *6 (D. Nev. Apr, 13, 2017) (dismissing complaint for lack of subject

13  matter jurisdiction because even if H-2A regulations incorporated into worker contracts,

14  no substantial federal question raised).

15      Therefore, in addition to failing to meet the requirements for federal jurisdiction

16  under CAFA, Defendants' alternative argument that federal question jurisdiction is

17  present in any event also fails.

18

19                                    **CONCLUSION**

20

21      For all the above reasons, Plaintiffs' Motion to Remand (ECF No. 6) is GRANTED

22  on grounds that Defendants have not demonstrated, as they must, that federal

23  jurisdiction over the subject matter of this lawsuit is present.  Given the Court's finding

24  that federal jurisdiction is lacking, Defendant CSI's Motion to Dismiss (ECF No. 19) is

25  DENIED as moot.

26  ///

27  ///

28  ///

1          The Clerk of the Court is directed to remand this case to the originating state

2  court, the Superior Court of the State of California in and for the County of San Joaquin,

3  for final adjudication.  The Clerk shall thereafter close the case in this Court.

4          IT IS SO ORDERED.

5  Dated:  September 30, 2021

MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE